**Ronald F. KOENIG, Petitioner,**

v.

**DEPARTMENT OF THE
NAVY, Respondent.**

No. 02–3126.

United States Court of Appeals,
Federal Circuit.

Jan. 16, 2003.

Neil C. Bonney, Bonney & Allenberg, P.C., of Virginia Beach, VA, argued for petitioner.

William L. Olsen, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

We again must determine whether a police officer at the United States Naval Base in Norfolk, Virginia was a law enforcement officer under 5 U.S.C. § 8336(c)(1), and therefore was entitled to more favorable retirement benefits. In *Watson v. Department of the Navy,* 262 F.3d 1292 (Fed.Cir.2001), we upheld the decision of the Merit Systems Protection Board ("Board") that other police officers at the Norfolk Naval Base were not law enforcement officers. We conclude that the position of the police officer in this case was substantially the same as the positions of the officers in *Watson,* and we therefore affirm the Board's decision that the petitioner was not a law enforcement officer.

I

■ A. Under the Civil Service Retirement System, 5 U.S.C. § 8336(c)(1) (2000),

an employee who qualifies as a "law enforcement officer" is eligible to retire at an earlier age, with fewer years of federal service, and with a higher retirement annuity than an ordinary civil service employee. *Watson*, 262 F.3d at 1296; *Bingaman v. Dep't of the Treasury*, 127 F.3d 1431, 1433 (Fed.Cir.1997). The governing statute defines "law enforcement officer" as "an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States...." 5 U.S.C. § 8331(20) (2000). The term is "strictly construed." *Bingaman*, 127 F.3d at 1435 (citing *Ryan v. Merit Sys. Prot. Bd.*, 779 F.2d 669, 672 (Fed.Cir.1985)).

Regulations of the Office of Personnel Management define a position's "primary duties" as duties "that—(i) Are paramount in influence or weight; that is, constitute the basic reasons for the existence of the position; (ii) Occupy a substantial portion of the individual's working time over a typical work cycle; and (iii) Are assigned on a regular and recurring basis." 5 C.F.R. § 831.902 (2002). In *Watson*, we accepted and applied the Board's emphasis on "the reasons for the position's existence" as the touchstone for determining the first prong of the regulatory definition of "primary duties." 262 F.3d at 1299–1301. The regulations also provide that law enforcement officer duties do not include "maintaining law and order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than persons who are suspected or convicted of offenses against the criminal laws of the United States." 5 C.F.R. § 831.902 (2002).

B. The petitioner Koenig was a police officer at the Naval Base in Norfolk, Virginia. His position was classified under the Civil Service Classification System in the GS–083 series, which covers police officers.

The classification standards for this position state that the "primary mission of police officers in the federal service is to maintain law and order" and that "police officers protect life, property, and the civil rights of individuals"—duties that are excluded from the law enforcement officer definition. *See id.* Although Koenig was assigned to the Military Working Dog Section, he spent only twenty percent of his time performing canine duties. He spent the remaining eighty percent of the time doing the same work as the other GS–083 police officers on the base. Those duties included patrolling the base, issuing traffic summonses, performing "first-responder" duties, conducting follow-up investigations, questioning witnesses and suspects, and preserving crime scenes. Five months before Koenig retired in June 1999, he applied to the Navy for service credit as a law enforcement officer under 5 U.S.C. § 8336(c)(1). When the Navy denied that request, he appealed to the Board. After a trial, the Board's administrative judge rendered an initial decision that Koenig had been a law enforcement officer.

A divided Board reversed and held that the Navy properly had denied him law enforcement officer status. The Board relied on the *Watson* analysis, which this court announced after the initial decision in this case, and analyzed "the basic reasons for the existence" of Koenig's position. It determined that his position "did not exist for the basic reasons of investigating, apprehending or detaining persons who violated or were suspected of violating the criminal laws of the United States" and therefore that his primary duties were not law enforcement. In so ruling the Board "examine[d] the evidence relating to his duties as both a Police/Patrol Officer and as a Canine Officer." It analyzed Koenig's position description, the lack of evidence indicating a maximum entry age for the position, job performance evaluations, and

the primary mission of federal police officers.

Chairman Slavet, dissenting, stated that Koenig's "position included criminal investigative responsibilities beyond those that would normally be assigned to a typical patrol officer position classified within this series" and that "his position existed primarily for 'the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States.' "

## II

In *Watson*, we upheld the Board's determination (reversing that of its administrative judge) that other police officers at the Norfolk Naval Base, whose positions also were classified in the GS–083 series, were not law enforcement officers because their "positions did not exist primarily for the purpose of investigating, apprehending, or detaining those suspected or convicted of federal offenses." 262 F.3d at 1297. Based on the Board's review of the OPM classification standards for GS–083 police officers, the position description of the jobs, "the testimony of the officers describing their daily or frequent duties," *id.* at 1304, and the lack of any maximum age for appointment or early retirement requirement, this court concluded that the Board had properly ruled that the "police officers have not proven that their primary duties nor those of their position involved the investigation, apprehension, or detention of criminals or suspects." *Id.* at 1304–05. We stated: "[i]ndeed, the official documentation of the GS–083 series indicates that all officers in that series in all departments of the federal government are presumptively not entitled to LEO [law enforcement officer] credit." *Id.* at 1304.

■ Except for his work with dogs, which we discuss below, Koenig's duties were indistinguishable in any substantial respect from the duties of the other Nor-

folk Base police officers that we held in *Watson* did not make them law enforcement officers. Like the officers in *Watson*, Koenig's duties consisted primarily of performing the routine work of a GS–083 police officer.

This is shown not only by the Board's detailed description of the various documents relating to his position and the testimony of his fellow officers and superiors, but by his own testimony that he performed "basically the same" duties as the police officers in *Watson*. Moreover, Koenig presented, as part of his case, the testimony of three police officials given in the Board's *Watson* proceedings. *Watson v. Dep't of the Navy*, 86 M.S.P.R. 318 (2000).

Koenig's position description states that "[t]he primary purpose of this position is to interdict illegal narcotics, explosive devices, and illegal activity involved with criminals and terrorists at naval activities in the Naval Base Complex, including all shipboard commands within the area." His performance evaluations also indicate that he did not perform law enforcement work. He was evaluated on his ability to "schedule searches and checks of buildings, parking lots and other assigned areas for detection of drug/explosives and apprehension of violators of the law," "patrol[ ] the Naval Base," and "provid[e] back-up support and assistance to patrol, tactical, investigative and departmental personnel." Those duties all involve "maintaining law and order, protecting life and property, and guarding against" violations of law; none involves "the investigation, apprehension, or detention" of suspects. *See* 5 U.S.C. § 8331(20); 5 C.F.R. § 831.902.

Koenig contends that there are two significant differences between his position and those of the officers in *Watson*, which call for a different result in the two cases. He points out that his position had a higher grade than that of the officers in *Wat-*

*son* and that, unlike those officers, he worked with a dog in performing investigatory duties.

He contends that his higher pay reflected his work with the dogs. The Navy's decision to pay him more because of his expert canine skills, however, did not alter the basic nature of his work. The critical inquiry was what were his primary duties, not what he was paid for performing them.

The Board found that Koenig spent only twenty percent of his time working with dogs. In *Hall v. Department of the Treasury*, 264 F.3d 1050 (Fed.Cir.2001), we upheld the Board's determination that a Canine Enforcement Officer, whose job description stated that he spent "[t]he major portion" of his time "working directly with his/her dog," was not a law enforcement officer. *Id.* at 1055. We pointed out that "whatever direct contact he may have had with criminal suspects was incidental to his primary duties of employing his 'active response' detector dog to detect narcotics." *Id.* at 1057. A fortiori, Koenig's work with dogs, which occupied only one-fifth of his working time, did not convert his position into that of a law enforce-

ment officer. As the Board stated in this case, Koenig's work with the detector dog was not "materially different from the positions of the Police Officers in *Watson,* who performed essentially the[ ] same tasks without the aid of a detector dog."

In *Hall,* we recognized that "the evaluation of and weight to be given to ... [the] evidence in the record are judgment calls that rest primarily within the discretion of the Board." 264 F.3d at 1060 (citing *Hannon v. Dep't of Justice,* 234 F.3d 674, 681 (Fed.Cir.2000)). The Board did not abuse its discretion or commit other legal error in concluding that Koenig had not established that his work as a police officer at the Norfolk Naval Base made him a law enforcement officer.

## CONCLUSION

The decision of the Board affirming the Navy's determination that Koenig was not entitled to law enforcement officer credit is

*AFFIRMED.*