NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOHN PAUL REDMOND,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2018-2233

---

Petition for review of the Merit Systems Protection Board in No. NY-1221-18-0025-W-1.

---

Decided: February 8, 2019

---

JOHN PAUL REDMOND, East Moriches, NY, pro se.

ADAM E. LYONS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, DEBORAH ANN BYNUM, ROBERT EDWARD KIRSCHMAN, JR.

---

Before DYK, CHEN, and HUGHES, *Circuit Judges.*

PER CURIAM.

John Paul Redmond appeals the decision of the Merit Systems Protection Board (Board) denying him relief under the Whistleblower Protection Act from personnel actions taken against him by the Department of Veterans Affairs (VA). Because the Board's decision is supported by substantial evidence, we affirm.

BACKGROUND

Mr. Redmond was employed by the VA as a contract specialist between October 2013 and September 2017, when he resigned. His duties included procuring goods and services for the agency. Appx 2.[1]

The central dispute on appeal concerns Mr. Redmond's claim that he was unlawfully reprimanded at work after disclosing problems with certain contractors at the VA's Northport Medical Center in New York. *Id.* Specifically, in February 2016, a company called Media Plumbing performed an inspection at the facility, and Mr. Redmond testified that due to an error, multiple operating rooms at the facility were contaminated and had to be closed for cleanup at significant cost to the VA. *Id.* Mr. Redmond opined that the error would not have occurred if a different contractor, Quality Services International (QSI), had performed the work under an existing contract. *Id.* In 2016, Mr. Redmond reported to the office of New York Congressman Lee Zeldin and to the VA's Inspector General that he believed QSI was underperforming on its contract and that QSI should have been disqualified from further work due to its record of poor performance and irregularities with invoicing. Appx 2–3, 6. Mr. Redmond also told the Inspector General that he believed Northport's former director Phillip Moschitta lied in a congressional hearing in September

---

[1]     "Appx" refers to pages in the appendix filed by the VA with its brief.

2016, because "Moschitta claimed that the contamination of the operating rooms occurred as the result of a power surge, when in reality, the inspection of the fire dampers and HVAC system caused the issue." Appx 6.

In the spring of 2017, Mr. Redmond had some conflicts with his supervisors at the VA. On April 5, 2017, Mr. Redmond's supervisor Lawrence Unger sent a performance counseling letter to Mr. Redmond listing three instances in which Mr. Unger asserted that Mr. Redmond had acted inappropriately toward VA customers. Appx 90–91.[2] On May 9, 2017, Mr. Unger sent a proposed reprimand to Mr. Redmond charging him with five instances of "unacceptable conduct" in the time following the April 5 letter. These included, among other things, "purposely delay[ing] acquisition[s]" and accusing a vendor of having "under table agreements." Appx 48. The VA division chief, Hope Freeman, approved the reprimand. Appx 9. Mr. Redmond also argued before the Board that the VA denied his request for reassignment on March 27, 2017. Appx 4.

Mr. Redmond initiated this action with the Board in late 2017. The Board found that Mr. Redmond submitted insufficient evidence to support a finding that he made a protected disclosure under the Whistleblower Protection Act protesting Media Plumbing's inspection of the Northport Medical Center. Appx 6–7. The Board also found that Mr. Redmond submitted insufficient evidence to support a reasonable belief that Mr. Moschitta lied to Congress. Appx 7. The Board further found that Mr. Redmond failed to submit sufficient evidence that the VA denied him any reassignment. Appx 10. On the other hand, the Board

---

[2]   For example, the letter criticized Mr. Redmond for "not effectively work[ing] with the customer and manag[ing] customer expectations" in "securing an option for a Laser Microscope Project for the Bronx VAMC." Appx 90.

found that Mr. Redmond had shown that he disclosed to Congressman Zeldin and the Inspector General that he had reasonable belief that QSI was billing for work not performed. *See* Appx 8. Further, the Board found that Mr. Redmond's disclosures contributed to his reprimand. Appx 8–9. However, the Board found by clear and convincing evidence that the VA would have issued the reprimand notwithstanding Mr. Redmond's protected activity. Appx 10–11. Thus, the Board denied Mr. Redmond's request for corrective action.

Mr. Redmond appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our authority to review a decision of the Board is limited by statute. We will only set aside the Board's decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Snyder v. Dep't of the Navy*, 854 F.3d 1366, 1372 (Fed. Cir. 2017). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

## I. Whistleblower Defense

Because the VA's purported basis for reprimanding[3] Mr. Redmond relates to statements in emails that Mr.

---

[3]    Mr. Redmond apparently argued to the Board that the VA retaliated against him by assigning him to work at the Bronx VA facility rather than the Northport VA facility. *See* Appx 9. The Board found that Mr. Redmond provided inconsistent testimony about whether the VA denied his request for a reassignment or not. *Id.* The Board credited testimony from the VA's director of contracting and

Redmond does not deny writing, the only issue on appeal is whether the VA's actions constitute unlawful retaliation. The Whistleblower Protection Act of 1989 prohibits an agency from taking or failing to take a "personnel action"[4] regarding an employee because of "any disclosure of information by [such] employee . . . which the employee . . . reasonably believes evidences—(i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . ." 5 U.S.C. § 2302(b)(8). Whistleblower retaliation is an affirmative defense. The employee must first show by a preponderance of the evidence that he made a protected disclosure and that the disclosure was a contributing factor in the personnel action against him. 5 U.S.C. § 1221(e)(1); *Carr v. Social Sec. Admin.*, 185 F.3d 1318, 1322 (Fed. Cir. 1999). If the employee satisfies this burden, the burden shifts to the agency to show "by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2).

The Board found that Mr. Redmond established a *prima facie* case of retaliation based on a protected disclosure of erroneous invoicing. Specifically, the Board found that it was reasonable for Mr. Redmond to believe that QSI

---

found that the VA eventually approved Mr. Redmond's request for a transfer on May 2, 2017. *Id.* Thus, the Board found that Mr. Redmond failed to show that the agency denied him any reassignment. Appx 10. While Mr. Redmond mentions a transfer request for the first time on appeal in his reply brief, he does not suggest that the Board's findings regarding reassignment are erroneous. *See* Reply Br. 2.

[4] A "personnel action" includes, among other things, "disciplinary or corrective action" and a "transfer or reassignment." 5 U.S.C. § 2302(a)(2)(A).

was billing for work not performed and that this practice violated the law. Appx 8. The Board found that Mr. Redmond disclosed his belief in this alleged erroneous invoicing to Congressman Zeldin and the VA's Inspector General. Appx 2–3, 8. Furthermore, the Board found that because Ms. Freeman and Mr. Unger knew that Mr. Redmond asserted whistleblower protection before the May 9, 2017 decision to reprimand him, Mr. Redmond satisfied his burden of showing that his protected disclosure was a contributing factor in his reprimand. Appx 9. The VA does not challenge these findings on appeal. VA Br. 14–15. Thus, Mr. Redmond satisfied his initial burden, and the burden shifted to the VA to show it would have taken the same personnel actions in the absence of such a disclosure.[5]

In determining whether an agency would have taken a personnel action in the absence of a protected disclosure, the Board may consider: (1) "the strength of the agency's evidence in support of its personnel action;" (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision;" and (3) "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr*, 185 F.3d at 1323. However, "*Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor." *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1374 (Fed. Cir. 2012).

---

[5]     We also see no error with the Board's rejection of Mr. Redmond's claims that he made additional protected disclosures that Media Plumbing should not have performed the inspection at the Northport facility or that the Northport facility's director lied to Congress.

A. Evidence in Support of the VA's Action

The Board found that Mr. Redmond engaged in "several instances of insubordination over a one-month period." Appx 11. Mr. Unger's May 9, 2017 letter proposing a reprimand describes five instances of "unacceptable conduct." Appx 48. First, in an email disagreement with a director at Olympus, one of the VA's vendors, Mr. Redmond wrote: "Perhaps, this is why under table agreements with small businesses should be evaluated more carefully." Appx 48; Appx 88.

Second, on April 19 and 20, 2017, in a discussion regarding leasing medical equipment, Mr. Redmond responded to criticism from Mr. Unger by calling Mr. Unger "dishonorable" and stating, "[m]anagement of large products require [sic] ethics which you lack." Appx 75–76.

Third, on April 25, 2017, a VA supervisor named Vivian Torres complained to Mr. Unger that Mr. Redmond sent "unprofessional" communications and that "Mr. Redmond purposely delays acquisition LEAD time and has become problematic to myself, the Medical Center CORs and other employees." Appx 65. The Board found Ms. Torres's testimony credible in part because she was outside the chain of command of Ms. Freeman, who approved Mr. Redmond's reprimand, Appx 11, though Mr. Redmond argues that Ms. Torres used to work for Ms. Freeman, Reply Br. 3.

Fourth, on April 25, 2017, Mr. Unger submitted a mid-year review for Mr. Redmond, which stated that Mr. Redmond's performance "needs improvement." Appx 61. In an email to Mr. Unger, Mr. Redmond refused to sign the performance review and wrote, "I encourage you to use moral integrity and principles to base future contracting decisions." Appx 57. He then claimed that Mr. Unger "combined documents to give the appearance that I signed the mid-year review." Appx 56. The copy of the review in the record on appeal states, "Employee Refused to Sign" in a box marked "Signature of Employee." Appx 61.

Fifth, between April 26, 2017 and May 2, 2017, Mr. Redmond and Mr. Unger engaged in an email dispute over Mr. Redmond's request to work at the Northport VA facility rather than the Bronx facility. Appx 50–54. Mr. Unger offered to allow Mr. Redmond to work from Northport one day a week and instructed him to report to the Bronx until Mr. Unger confirmed space availability at Northport. Appx 51. Mr. Redmond's response emails were argumentative and attacked Mr. Unger's character. Appx 50–51.

Each of the VA's claims of misconduct is supported by emails in the record, and Mr. Redmond does not dispute that he wrote any of the statements attributed to him. Thus, clear and convincing evidence supports the Board's finding that Mr. Redmond committed the specified misconduct.

## B. Motive to Retaliate

Although Mr. Redmond established by a preponderance of evidence that his protected disclosure contributed to his May 9, 2017 reprimand, the Board found that Ms. Freeman, who approved the reprimand, "had very little motive to retaliate here." Appx 11. The Board cited testimony that "QSI's contracts were awarded by consensus of a group of people, to include a subject matter expert, and were submitted to various levels of review." Appx 11. The Board noted that Ms. Freeman and Mr. Unger "testified without contradiction that they suffered no personal consequences from the Congressional investigation" and that "the record does not contain evidence that any punishment or censure to the agency resulted from the appellant's disclosure." Appx 11.

While Mr. Redmond claims that the Board improperly ignored various pieces of evidence, he does not argue that the excluded evidence relates to motivation to retaliate. *See* Appellant Informal Br. at Answers 2, 4, 5. Mr. Redmond asserts that "[t]he facility maintenance contract was one of the many awards to QSI by Hope Freeman and her

Lieutenants," which he characterizes as "collusion." Reply Br. 2. Even if we were to consider this argument, which was made for the first time on appeal in Mr. Redmond's reply brief and therefore improper, unsworn statements by advocates are not evidence, and Mr. Redmond cites no evidence in the record in support of his "collusion" claim. Even assuming Ms. Freeman or Mr. Unger awarded work to QSI, Mr. Redmond does not explain how that fact would lead to an inference of retaliation.

The weight to be given to the evidence of record is a "judgment call[] that rest[s] primarily within the discretion of the Board." *Koenig v. Dep't Of Navy*, 315 F.3d 1378, 1381 (Fed. Cir. 2003). Based on the record before us, we find that the Board did not abuse its discretion in finding that the evidence of motivation to retaliate was relatively weak.

## C. Treatment of Others Who Were Similarly Situated

The Board found that "the record does not indicate that another, non-whistleblower was treated preferentially under similar circumstances." Appx 11. It was the VA's burden to submit evidence in support of the third *Carr* factor, and we interpret the Board's brief statement to mean that the VA declined to submit any such evidence. We have held that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore*, 680 F.3d at 1374. Because the record is devoid of evidence of others who were accused of similar misconduct, we decline to consider this factor in determining whether the VA would have reprimanded Mr. Redmond in the absence of his protected disclosures.

## D. Findings Based on *Carr* Factors

The Board concluded that the VA "demonstrated clearly and convincingly that it would have reprimanded the appellant notwithstanding his protected activity." Appx 11. The Board correctly found that the evidence that Mr. Redmond engaged in several instances of misconduct

was clear and convincing. Moreover, Mr. Redmond cited no evidence contrary to the testimony cited by the Board to find that Mr. Redmond's supervisors had little motive to retaliate. It is not for this court to reweigh evidence on appeal, and we see no reversible error in the Board's conclusion that "a reprimand was very reasonable for several instances of insubordination over a one-month period." Accordingly, we affirm the Board's finding that the VA would have reprimanded Mr. Redmond notwithstanding his disclosure of alleged invoicing problems.

## II. Evidentiary Arguments and Motions

It appears that many of Mr. Redmond's arguments attempt to show that the VA improperly awarded contracts to QSI and that VA personnel tried to hide this development.[6] These allegations, if true, would be troubling, but the Board did not abuse its discretion in declining to consider the evidence Mr. Redmond cites to support them. This is because the proffered evidence is either irrelevant or unnecessary to decide whether the VA would have reprimanded Mr. Redmond in the absence of whistleblowing. The Board already found that Mr. Redmond made a protected disclosure regarding alleged erroneous invoicing, Appx 8, and so the Board did not need to further consider alleged government waste. Accordingly, Mr. Redmond's "Motion for Record" (ECF No. 34) and "Motion of Record

---

[6] *See, e.g.*, Appellant Informal Br. at Answer 2 (asserting that the Board "purposely suppressed evidence of massive government waste" and "ignored all motions for evidence including original contract . . . and congressional hearing statements"); *id.* at Answer 4 (asserting that the "statement of work has sections that were deleted from the original contract relevant to the case"); *id.* at Answer 5 (arguing that "[f]or years QSI and J&J services did nothing to support the facility" and that "[t]his is a total cover up on a massive scale").

and Supplementary Evidence of Congressional Hearing at Northport VA and Awards" (ECF No. 35) are denied.

Mr. Redmond's "Motion of Record Office of Special Counsel Letter for Petitioner" (ECF No. 37) is denied as moot because the document Mr. Redmond seeks to add to the record was already attached to the VA's appendix at Appx 45.

## CONCLUSION

We have reviewed Mr. Redmond's remaining arguments and consider them unpersuasive. For the foregoing reasons, we affirm the Board's decision.

## AFFIRMED

### COSTS

No costs.