## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SAMUEL SHUTTLEWORTH,
          Appellant,

      v.

DEPARTMENT OF HOMELAND
    SECURITY,
          Agency.

DOCKET NUMBER
DC-0842-22-0412-I-1

DATE:  March 31, 2025

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Samuel Shuttleworth, Suffolk, Virginia, pro se.

Nicholas R. Hankey, Esquire, and Melissa Williams, Esquire,
    Washington, D.C., for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
Cathy A. Harris, Member*

*The Board members voted on this decision before March 28, 2025.

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed the agency's decision denying his request for retroactive law enforcement officer (LEO) retirement coverage under the Federal Employees'

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Retirement System (FERS) for his period of employment with the Federal Protective Service (FPS). Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to apply the two-part, two-factor analysis for LEO retirement coverage in accordance with *Klipp v. Department of Homeland Security*, 34 F.4th 1326 (Fed. Cir. 2022), we AFFIRM the initial decision.

## BACKGROUND

The appellant held various law enforcement positions within FPS from August 31, 1997, through his retirement on September 30, 2018, at age 66. Initial Appeal File (IAF), Tab 21 at 4-5. According to the appellant, he always believed he was entitled to LEO retirement coverage and did not learn of his ineligibility until he received his estimated retirement annuity shortly before his retirement. IAF, Tab 1 at 3, Tab 7 at 53, 63. He obtained a final agency decision on the issue on May 2, 2022, which denied his claim for LEO retirement coverage. IAF, Tab 1 at 6. This appeal followed. IAF, Tab 1.

After a hearing, the administrative judge issued an initial decision affirming the agency's decision. IAF, Tab 31, Initial Decision (ID). She

considered the appellant's position descriptions and his actual duties and determined that the reason for the appellant's positions was the protection of Federal property rather than the investigation, apprehension, or detention of criminal suspects. ID at 10-23. She concluded that the appellant did not qualify for LEO retirement coverage. ID at 23.

The appellant has filed a petition for review, re-raising several of his arguments below and arguing prejudicial error in the administrative judge's decision to continue the August 1, 2022 hearing to August 22, 2022. Petition for Review (PFR) File, Tab 1 at 2-15. The agency has responded to the petition for review, and the appellant has submitted an untimely reply.[2] PFR File, Tabs 4-7.

### DISCUSSION OF ARGUMENTS ON REVIEW

The LEO system is a special retirement system established by Congress for Federal employees in certain positions to retire at an unusually early age. *Watson v. Department of the Navy*, 262 F.3d 1292, 1296 (Fed. Cir. 2001). Under 5 U.S.C. § 8412(d), an employee covered under FERS may retire at age 50 after completing 20 years of LEO service, or at any age after completing 25 years of LEO service. A qualifying employee also receives a larger annuity than ordinary civil service employees but is subject to larger salary deductions during his employment. *Watson*, 262 F.3d at 1296. Because of this additional cost to the Federal Government, eligibility for LEO retirement coverage must be strictly

---

[2] The appellant moved for an extension of time to file a reply to the agency's response 66 days after he allegedly received the agency's response in the mail. PFR File, Tab 5 at 2. His motion was thus untimely by 56 days. *See* 5 C.F.R. § 1201.114(e), (f). He subsequently submitted a substantive reply and has argued good cause for his untimely submissions: he assumed that the agency did not perfect its response after it was rejected by the Board due to length limitations because he received only one submission by the agency in the mail. PFR File, Tab 5 at 2, Tab 7 at 3. We credit the appellant's explanation; however, we do not find that he exercised due diligence or ordinary prudence under the circumstances. Therefore, we find his motion and substantive reply to be untimely without good cause shown. *See Alonzo v. Department of the Air Force*, 4 M.S.P.R. 180, 184 (1980); 5 C.F.R. § 1201.114(g). We have reviewed his reply nonetheless, and it does not warrant a different outcome. PFR File, Tab 7 at 6-14.

construed. *Id.* at 1298. As with all applications for retirement benefits, an applicant seeking LEO retirement coverage bears the burden of proving entitlement by preponderant evidence. *See* 5 C.F.R. § 1201.56(b)(2).

For purposes of FERS retirement coverage, there are two types of LEO positions—rigorous ("primary") and secondary. *See* 5 C.F.R. § 842.803(a)-(b); *see also Klipp*, 34 F.4th at 1329. Primary law enforcement positions earning credit are those in which an employee's primary duties are "the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, or [ ] the protection of officials of the United States against threats to personal safety," and the duties are "sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals." *Id.*; 5 U.S.C. § 8401(17)(A)(i)-(ii); *see also* 5 C.F.R. § 842.802.[3] Employees whose primary duties involve "maintaining order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than those who are suspected or convicted of offenses against the criminal laws of the United States" do not hold a primary LEO position. *See Watson*, 262 F.3d at 1298; 5 C.F.R. § 842.802. Service in a secondary LEO position is covered if the employee moves directly from a rigorous position to a secondary position, the employee has completed 3 years of service in a rigorous position, and the employee has been continuously employed in a secondary position without a break in service exceeding 3 days. 5 U.S.C. § 8401(17)(C); 5 C.F.R. § 842.803(b). Consequently, if the employee never held a rigorous, or primary, LEO position, he cannot meet the requirements for secondary coverage either. 5 C.F.R. § 842.803(a)-(b).

---

[3] "Primary duties" means those duties of a position that are paramount in influence or weight; that is, constitute the basic reasons for the existence of the position; occupy a substantial portion of the individual's working time over a typical work cycle; and are assigned on a regular and recurring basis. 5 C.F.R. § 842.802. In general, if an employee spends an average of at least 50% of his time performing a duty or group of duties, they are his primary duties. *Id.*

During the pendency of the petition for review, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) issued a precedential decision that we find to be instructive on the issues in this appeal. *See Klipp*, 34 F.4th at 1332-33. The Federal Circuit explained that the Board must first examine the position description (PD) to determine whether the position qualifies as a rigorous LEO position, then, if the position fails to qualify, afford the appellant the opportunity to show that the actual duties of his position are sufficient to establish LEO status. *Id*. It emphasized that these findings must be independent. *Id.* at 1333. Second, in assessing an appellant's actual duties, the Federal Circuit explained that "physical vigorousness" is the first and most important factor, and that the "hazardousness" of the position need only be considered if the position is sufficiently vigorous. *Id.* at 1332.

The Federal Circuit reiterated the subfactors it provided in *Crowley v. United States*, 398 F.3d 1329, 1339 (Fed. Cir. 2005): "physical vigorousness" is assessed by evaluating (in order of importance) whether the position has (1) strenuous physical fitness requirements, (2) age requirements—such as a mandatory retirement age or a maximum entry age, or (3) a requirement that the appellant be on call 24 hours a day. *See Klipp*, 34 F.4th at 1332. Hazardousness depends on—in order of importance—whether the position (1) requires frequent and consistent contact with criminal suspects; or (2) authorizes the appellant to carry a firearm. *Id.*

In this case, the administrative judge's analysis was not fully consistent with the Federal Circuit's decision in *Klipp*. ID at 10-23. Nevertheless, because the record is fully developed on the relevant issues, we will apply the analysis outlined by the Federal Circuit. In making our findings, we have fully considered the appellant's arguments in his petition for review. PFR File, Tab 1 at 2-15.

<u>The appellant's position descriptions do not describe a rigorous LEO position.</u>

The appellant held four different positions within FPS: (1) Police Officer, from August 31, 1997, to June 6, 1998; (2) Supervisory Police Officer, from

June 7, 1998, to February 9, 2002; (3) Physical Security Specialist (Law Enforcement Security Officer (LESO)), referred to as "Inspector," from February 10, 2002, to July 10, 2004, and approximately June 2015 to September 30, 2018; and (4) Physical Security Specialist (LESO), referred to as "Canine Handler," from July 11, 2004 to approximately June 2015. IAF, Tab 21 at 4-5. We first examine whether, according to the position descriptions, the primary duties of these positions were rigorous LEO duties. *See Klipp*, 34 F.4th at 1333; *see also* 5 U.S.C. § 8401(17)(A)(i)-(ii); 5 C.F.R. § 842.802.

In the PD submitted by the appellant for his GS-8 Police Officer position, PC5-B330, the first duty described is "law enforcement work in the protection of life, property, and the rights of individual citizens . . . on Federal property." IAF, Tab 8 at 44-45. The PD, when read as a whole, reflects that the basic reason for the existence of the position is to "patrol" an assigned area. IAF, Tab 8 at 45-47. The Office of Personnel Management (OPM) regulation at 5 C.F.R. § 842.802 states that the definition of law enforcement officer does not include an employee whose primary duties involve maintaining order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than those who are suspected or convicted of offenses against the criminal laws of the United States. Hence, this type of work is specifically designated by the OPM regulation to be non-LEO work. *Id.* at 45-47.

The PD also indicates that the incumbent "initiates and conducts investigations that extend more than one shift beyond the normal patrol shift on a regular and recurring basis," "is involved in the interrogation of suspects," and "identifies and arrests violators for crimes." *Id.* at 45-46. We note that these duties would constitute LEO duties if the offenses were against the "criminal laws of the United States."[4] *See* 5 C.F.R. § 842.802. However, beyond the statement

---

[4] Crimes that a patrol officer might respond to, such as theft, vandalism, assault, disorderly conduct, and threats against Federal employees, could be classified as offenses against the criminal laws of the United States. *See Lott v. General Services Administration*, 84 M.S.P.R. 324, ¶ 18 nn.11-15 (1999).

that investigations are conducted on a "regular and continuing basis," the PD does not contain any other indication that these LEO duties are "primary duties," such as a percentage of time spent on these duties. *Id.*; *see* 5 U.S.C. § 8401(17)(A)(i)-(ii); 5 C.F.R. § 842.802. Regarding rigorousness, the PD states that the incumbent "must have the physical ability to safely operate motor vehicles on public highways"; however, the first three pages of the PD—the only portion supplied by the appellant and available for review—contain no other mention of physical fitness requirements.[5] IAF, Tab 8 at 45-47. The available pages also do not mention a maximum entry or retirement age. *Id.* Accordingly, we find that the Police Officer position fails to qualify for LEO status based on the available official documentation of the position.

The PD for the appellant's GS-10 Supervisory Police Officer Position, PD FM2490, lists approximately nine "major duties," the majority of which involve the assignment of work, review of work, and other managerial duties that appear to be mostly sedentary. IAF, Tab 8 at 36-38. Although the last duty listed under "major duties" states that the incumbent "may be assigned" other duties, "including all police functions and responsibilities associated with the Police Officer (FPO) position," it is evident that the basic reason for the existence of the position is to supervise such positions. *Id.* at 38. Moreover, as with the Police Officer PD, it appears that the policing duties involve protecting life and property and, therefore, are non-LEO duties. *Id.* at 37-38; *see* 5 C.F.R. § 842.802. Furthermore, the PD states vaguely that the employee must meet "basic training and in service training requirements and medical standards established" but does not specify physical or age requirements. *Id.* at 40. We conclude that this PD also does not describe a primary, rigorous LEO position.

---

[5] The agency reports that this PD was submitted by the appellant to the agency as part of his LEO retirement claim and that the agency was unable to locate the full PD, which was over 20 years old. IAF, Tab 7 at 14 n.2, 38, Tab 8 at 45-47. The parties stipulated that this PD applies. IAF, Tab 21 at 4.

Regarding the appellant's "Inspector" position, the appellant held this position at the GS-11 and GS-12 grade levels.[6]  IAF, Tab 7 at 142-46, Tab 8 at 31-34, Tab 21 at 5.  The PDs at both grade levels describe a variety of duties related to the physical security of government-owned and -leased facilities including conducting surveys, assessments, and inspections of worksites.  IAF, Tab 7 at 142-43, Tab 8 at 31-32.  Based on a reading of the PDs as a whole, we find that the basic reason for the position is "primary responsibility for the physical security program" of the assigned building(s) and not the performance of LEO duties.  IAF, Tab 7 at 142, Tab 8 at 31; *see* 5 C.F.R. § 842.802.

The PDs state that the incumbent also performs duties as a police officer/law enforcement official and lists a mix of LEO and non-LEO duties under the description of "law enforcement work."[7]  IAF, Tab 7 at 143, Tab 8 at 32.  The GS-12 PD further specifies that the law enforcement duties occur on a "regular and occurring basis."  IAF, Tab 7 at 143.  However, we do not find that the LEO duties are primary based on this language alone.  Regarding rigorousness, the PDs state that the work "requires moderate to arduous physical exertion in exercising police authorities such as that required to subdue, disarm and arrest violent or potentially violent persons suspected of crimes.  There may also be exposure to occasional long periods of overtime, shift rotation and participation in surveillance and undercover operations."  IAF, Tab 7 at 145, Tab 8 at 34.  However, the section titled, "Work Environment," states that the work is performed primarily in an office or classroom setting.  IAF, Tab 7 at 146,

---

[6] The appellant re-raises an argument on review that FPS intentionally misclassified him in the Security Administration Series, GS-0080, for the purpose of denying him LEO coverage.  PFR File, Tab 1 at 5-6; IAF, Tab 7 at 61.  As noted by the administrative judge, the issue of the proper classification of a position is generally not within the Board's jurisdiction.  ID at 9-10; *see Pierce v. Merit Systems Protection Board*, 242 F.3d 1373, 1375-76 (Fed. Cir. 2001).  Thus, we will not consider this issue.

[7] For example, "the protection of life, property and the rights of individual citizens" is not an LEO duty; however, arresting offenders could be an LEO duty.  IAF, Tab 7 at 143, Tab 8 at 32; *see Watson*, 262 F.3d at 1298; 5 C.F.R. § 842.802.

Tab 8 at 34. Thus, we conclude that, although these PDs reflect that the position involves some LEO duties that are physically demanding, they do not reflect that they are the "primary duties" of the position.

Lastly, the PD for the appellant's Canine Handler position states that, "in conjunction with law enforcement and security duties, incumbent of this position also spends a significant portion of time (50%) working as a member of an Explosive Detection Dog (EDD) team (handler and canine), searching for explosive devices." IAF, Tab 7 at 135. Thus, the PD clearly describes at least 50% non-LEO duties because searching for explosive devices is not an LEO duty. *Id*.; *see Koenig v. Department of the Navy*, 91 M.S.P.R. 1, ¶ 14 (2001), *aff'd*, 315 F.3d 1378 (Fed. Cir. 2003). As with the Inspector PD, the "law enforcement work" described is a mix of LEO and non-LEO duties, and the same physical demands as the Inspector PD are listed.[8] IAF, Tab 7 at 136-38. However, as with the Inspector PD, most of the PD is devoted to a description of security duties, and the PD also states that the work is "performed primarily in an office or classroom setting." *Id*. at 136-39. We conclude that any rigorous LEO duties performed make up only a portion (less than 50%) of the duties according to the PD and thus are not "primary duties." *See* 5 C.F.R. § 842.802.

Accordingly, based on the position description evidence alone, we do not find that any of the four positions held by the appellant during his tenure qualify for LEO coverage.

<u>The appellant has not established entitlement to LEO coverage based on the actual duties of his positions.</u>

Consistent with our instruction by the Federal Circuit in *Klipp*, we turn next to whether the appellant is entitled to LEO retirement coverage based solely on the actual duties of these positions. *See Klipp*, 34 F.4th at 1333. Much of the

---

[8] The Canine Handler PD further requires the ability to lift the weight of the canine, typically 60 pounds, and carry the canine for approximately 25 feet. IAF, Tab 7 at 138. Because this physical requirement is related to a non-LEO duty, i.e., explosives detection, it is not evidence of a rigorous LEO duty.

initial decision as well as the testimony at the hearing was devoted to an analysis of the appellant's actual duties. ID at 10-23; IAF, Tab 25, August 1, 2022 Hearing Recording (HR-1); IAF, Tab 27, August 22, 2022 Hearing Recording (HR-2). We find no error in the administrative judge's factual findings regarding the appellant's actual duties. ID at 10-23. Nevertheless, according to the Federal Circuit in *Klipp*, the questions of vigorousness and hazardousness should be separately discussed. *Klipp*, 34 F.4th at 1333. The factors relevant to vigorousness are—in order of importance—whether the position has (1) strenuous physical fitness requirements, (2) age requirements—such as a mandatory retirement age or a maximum entry age, and (3) a requirement that an employee be on call 24-hours a day. *Id.* at 1332.

The appellant does not dispute the administrative judge's factual findings that there were no continued physical fitness requirements in any of his positions. PFR File, Tab 1 at 7; ID at 10, 19. He argues, however, that this factor should be irrelevant to the analysis of LEO coverage because officers at other law enforcement agencies within DHS also do not have recurrent physical fitness testing but receive LEO coverage. PFR File, Tab 1 at 7-8. Even if the factual basis for the appellant's argument is true, his argument is unavailing. Congress, at 5 U.S.C. § 8401(17)(A)(ii), has restricted LEO retirement coverage to "rigorous" positions, and we are bound by our reviewing court's instruction to consider strenuous physical fitness requirements as a factor. *See Klipp*, 34 F.4th at 1332; *Crowley*, 398 F.3d at 1339; *see also Watson*, 262 F.3d at 1298 (stating that eligibility for LEO retirement coverage must be strictly construed). In other words, the appellant's argument that other officers are improperly afforded LEO coverage does not aid him in establishing his own entitlement under the law. We find that he has not established this first—and most important—factor relevant to physical vigorousness. *Klipp*, 34 F.4th at 1333.

Turning to the second factor relevant to physical vigorousness, i.e., age requirements, the appellant did not present any evidence before the administrative

judge that there was a maximum age for entry or early mandatory retirement age for any of his positions. In fact, he expressly denied on cross-examination that there were such requirements. HR-1. For the first time on review, he argues that he would have been exempt from a maximum entry age requirement because of his veteran's preference, PFR File, Tab 1 at 8-9, and he presents new evidence in the form of DHS policies regarding maximum entry age requirements for certain DHS positions including Customs and Border Protection Officers, Firefighters, and Law Enforcement Officer positions, *id.* at 16-19.[9] We decline to consider this new argument and evidence presented for the first time on review because the appellant has not shown that it was unavailable before the record below. *See Chin v. Department of Defense*, 2022 MSPB 34, ¶ 8; *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 34 n.10.

Regarding the third—and least important—factor related to the vigorousness of the actual duties of a position, the appellant reasserts on review that he was required to be on call 24 hours a day during at least a portion of his career.[10] PFR File, Tab 1 at 10-11; IAF, Tab 19 at 8; *see Klipp*, 34 F.4th at 1332. More specifically, he argues that the "Home-to-Work" program, which allowed him to take home his police vehicle, required that he document his "call-outs" in a monthly report. PFR File, Tab 1 at 11; IAF Tab 19 at 8. He asserts that he documented approximately 30 callouts between late 2014 and early 2018, when he held the position of Canine Handler. PFR File, Tab 1 at 11; IAF Tab 19 at 8. In finding no on-call requirement, the administrative judge appeared to credit the testimonies of the Regional Director for FPS Region 3 and the FPS Branch Chief for Canine Operations. ID at 12, 19. We find the testimony of these witnesses

---

[9] The agency contends that these policies did not apply to the positions held by the appellant. PFR File, Tab 4 at 26-27.

[10] The administrative judge stated that it was undisputed that there were no on-call work requirements, ID at 21, which is not entirely consistent with the appellant's pleadings or arguments furthered on cross-examination, IAF, Tab 19 at 8; HR-2 (cross-examination of the FPS Branch Chief for Canine Operations).

that the Home-to-Work vehicle program was voluntary, and that participants were not restricted to particular locations or subject to disciplinary action for failure to respond to calls from a dispatcher, to be persuasive evidence that the appellant was not required by the obligations of his position to be on call 24 hours a day. HR-2 (testimony of the Regional Director for FPS Region 3; testimony of the FPS Branch Chief for Canine Operations).

The appellant attempts to impeach the testimony of these witnesses by submitting, for the first time on review, documentation of the Home-to-Work Transportation Program directive. PFR File, Tab 1 at 14, 20-28. This directive states, in pertinent part, that the GS-0080, Certified Federal Law Enforcement Security Officers / Inspectors "are required to provide a 24 hour response." *Id.* at 25. Again, the Board generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the close of the record below despite the party's due diligence, and we find no such showing here. *See Chin v. Department of Defense*, 2022 MSPB 34, ¶ 8. In addition, the Board will not grant a petition for review absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision. *See Spivey v. Department of Justice*, 2022 MSPB 24, ¶ 15. Here, even if the appellant proved a 24-hour on-call requirement, satisfaction of only the 24-hour on-call requirement will not satisfy the physical vigorousness factor. *See Crowley*, 398 F.3d at 1339 n.8. This new evidence, therefore, does not warrant an outcome different from that of the initial decision.

After considering the three subfactors, we conclude that the actual duties of the appellant's positions were not sufficiently vigorous to establish LEO status. As hazardousness need only be addressed if the position is sufficiently vigorous, we have not considered whether the appellant's actual duties required frequent and consistent contact with criminal suspects, as he argues on review, in our decision in this case. PFR File, Tab 1 at 10-14; *see Klipp*, 34 F.4th at 1333 (citing *Crowley*, 398 F.3d at 1339).

Finally, the appellant alleges that the administrative judge improperly continued the August 1, 2022 hearing to August 22, 2022, prejudicing him by allowing the agency additional time to prepare. PFR File, Tab 1 at 3-4; IAF, Tabs 22-23; HR-1; HR-2. The prehearing conference order reflects that the hearing was scheduled to begin on August 1, 2022, and would continue on August 22, 2022, and that the appellant, bearing the burden of proof in this case, would present his case-in-chief first. IAF, Tab 21 at 8-9. The appellant did not object to the hearing schedule at that time. The record further reflects that the administrative judge permitted the appellant to use the full day on August 1, 2022 to present his case-in-chief, which necessitated the scheduled continuance for the agency's presentation of its witness. IAF, Tab 25, Tab 26 at 2-3. Administrative judges have broad authority to govern the proceedings before them. 5 C.F.R. § 1201.41(b); *see Morrison v. Department of the Navy*, 122 M.S.P.R. 205, ¶ 12 (2015). Under the circumstances, we find that the appellant has not shown that the administrative judge abused her discretion regarding the scheduling set forth in the prehearing conference order.

The initial decision is affirmed as modified, consistent with the Federal Circuit's analysis in *Klipp*, 34 F.4th at 1332-33.

## NOTICE OF APPEAL RIGHTS[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board
Washington, D.C.